IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JOHN RICHARDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:19-CV-672-KFP |
| ) | |
| CLYDE A. OWENS, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John Richardson brings this lawsuit against Defendants Clyde A. Owens and C.A. Owens & Associates, Inc. asserting numerous claims related to an oral agreement made between the parties in 2012 or 2013.[1] Defendants filed a motion for summary judgment (Doc. 18) and supporting brief (Doc. 19), Richardson filed a response (Doc. 20), and Defendants filed a reply (Doc. 22). The Court heard oral argument on the motion on April 26, 2021. *See* Docs. 25, 26. Upon consideration of the parties' submissions and testimony, the record, and the relevant law, Defendants' motion is GRANTED for the reasons set forth below.

**I.    STANDARD OF REVIEW**

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

---

[1] The Complaint asserts that the subject agreement was made in 2012, but the parties later assert that it was made in 2013. The exact date of the subject agreement is immaterial to this Order.

P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

"In reviewing whether the nonmoving party has met its burden, the [C]ourt must stop short of weighing the evidence and making credibility determinations of the truth of the matter." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992) (citation omitted). "Instead, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 999 (citations and internal quotations omitted). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d

1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## II.   STATEMENT OF FACTS

### A.   Uncontested Facts[2]

Defendant Owens is a resident of Okaloosa County, Florida. In 2009, he purchased a 1300-acre tract of land in Macon County, Alabama, in his individual name. Shortly after that purchase, he met Richardson. For the next couple of years, the two were friends and spent time together on the property.

In approximately 2012, Owens and Richardson entered into an agreement for Richardson to cut timber from the property for Owens. Richardson was in the timber business at that time. Richardson agrees that, as to the timber cutting relationship between the parties, it was an arms-length transaction and each party treated the other fairly.

In approximately 2013, Richardson and Owens discovered that a neighbor had harvested a deer that had been spotted several times on Owens' property. Richardson suggested that Owens construct a high fence around his property to contain the deer. Subsequently, Richardson and Owens agreed that Richardson, through his timber businesses, would harvest the timber to make way for the high fence and earn Owens enough money to build the fence. They further agreed that a third-party named Rodney Griffith would clear the right of way after Richardson harvested the timber. However,

---

[2] These facts derive from Defendants' Brief in Support of Motion for Summary Judgment. *See* Doc. 19 at 2-3. Richardson concurs that these facts are uncontested. *See* Doc. 20 at 2.

4

Griffith stopped working part-way through the job, so Richardson finished the clearing. Owens paid Richardson for that work, and Richardson has no complaints related to that engagement.

Richardson finished cutting the timber and clearing the right of way, and a third-party built the high fence. At some point after the high fence was completed, Owens and Richardson discussed the idea of buying genetically superior deer to increase the quality of the deer on the property. What happened next is the crux of the dispute between the parties.

### B.     Disputed Facts

#### 1.     Owens' Version of Events

According to Owens, he decided to buy his own breeder deer with his own money. Thus, deer pens were constructed on Owens' property and Owens purchased the deer. At that point, Owens and Richardson determined that there may be a way to make a profit from the sale or paid hunting of the purchased and raised deer. Owens testified that the terms of the parties' arrangement were as follows:

> [I]f [Richardson] provide[d] the sweat equity of managing the deer on a day-to-day basis and seeing about who we can sell deer to and generate some revenue, then what we'll do is we'll take the revenues for the year and we'll subtract the consumables like medicine, deer feed, et cetera, et cetera, and if we come up with any profit, then we'll split it in two.

Doc. 19 at 4. Subsequently, beginning in or around 2013, deer were bred and raised on Owens' property. During that time, no revenue was generated from the deer business. To the contrary, Owens alleges he suffered losses of $196,000 to $230,000 each year from the

5

business. At some point between 2017 and 2019,[3] Owens decided to stop the failing deer business. He informed Richardson of this fact and their relationship terminated. Owens contends that no partnership was ever formed between the parties.

### 2. Richardson's Version of Events

Richardson testified that, at the time the parties entered into their arrangement, Owens "kept denying partnership." Doc. 18-3 at 35:2-10. However, despite Owens' contrary belief, Richardson contends the two orally formed a general partnership for the purpose of breeding and raising deer. The goal was to raise genetically superior deer and to sell deer hunts, deer semen, and deer to other farms. Under the alleged partnership agreement, Owens would supply all the land and money for the operation, and Richardson would supply the sweat equity, or day-to-day labor. Richardson testified that his understanding of the terms was that Owens "would put the money up front, and I done the work. And then whenever we started making money . . . he would split it with me." Doc. 18-3 at 35:2-10. In support of his claim that the two formed a partnership, Richardson presents various licensing and business documents listing Richardson as a "co-owner" or "partner" with Owens. *See* Doc. 20 at 3.

Richardson alleges that, following the parties' arrangement, he worked on Owens' property for approximately five years without being paid.[4] Additionally, despite the initial

---

[3] Owens testified that he decided to end the deer business in 2017 (*see* Doc. 18-4 at 11:7-8); Richardson alleges in his response to summary judgment that Owens ended the business "[a]t some point in 2018" (*see* Doc. 20 at 4); and the Complaint alleges that Owens ended the business in "March of 2019" (*see* Doc. 1-1 at 3). The precise date on which the parties' relationship terminated is immaterial to this Order.

[4] Owens admits Richardson was not paid by the hour for his work managing the property; however, he

6

goal of the business, Richardson alleges that Owens would never allow him to sell any deer hunts or deer for profit because it wasn't "worth it."[5] *Id.* at 4; Doc. 21-9 at 2. Then, at some point between 2017 and 2019, Owens made the unilateral decision to dissolve the partnership and ban Richardson from his property. According to Richardson, at the time Owens terminated their relationship, there were approximately 92 deer in the breeder pen worth approximately $4,000 each. Owens did not sell or attempt to sell any of the deer; instead, he released them from the pen and onto his 1300-acre property, and then Owens listed his property for sale. Richardson now claims he is entitled to some value related to the parties' agreement or his work on the property.[6]

## III. DISCUSSION

Richardson's Complaint contains four counts for fraud (Count I), unjust enrichment (Count II), conversion (Count III), and breach of implied contract (Count IV). *See* Doc. 1-1. Defendants move for summary judgment on all counts. In his response to Defendants' summary judgment motion, Richardson states:

> Having had the benefit of discovery and read the Defendants Motion for Summary Judgment, Plaintiff agrees that Defendant C.A. Owens & Associates, a business owned by Defendant Clyde Owens, was not involved in the business dealings giving rise to this lawsuit and is entitled to Summary Judgment on all counts leaving only Clyde A. Owens individually as a Defendant. The Plaintiff further acknowledges that based on the facts and law presented by the Defendant, that Summary Judgment is due to be

---

testified that he allowed Richardson and his family to live on the property for free during the parties' arrangement. *See* Doc. 18-4 at 26-27.

[5] Owens contends that Richardson sold deer hunts without authorization and kept the money for himself. *See* Doc. 5 at 14-15.

[6] As will be discussed below, it is unclear whether Richardson contends he is entitled to remuneration for his day-to-day work on the property, the various improvements he alleges he made to the property, possible future monies gained from the remaining deer on the property, or all or some combination of the above.

> GRANTED on count II for Unjust Enrichment and Count IV for Breach of Implied Contract.

Doc. 20 at 1-2. Upon consideration, the Court agrees. Accordingly, Defendant C.A. Owens & Associates, Inc. is entitled to summary judgment on all counts and is DISMISSED as a defendant in this action. Furthermore, Defendant Owens is entitled to summary judgment on Count II for unjust enrichment and Count IV for breach of implied contract, and those claims are DISMISSED. Thus, the two remaining counts before the Court are Richardson's Count I for fraud and Count III for conversion.

### A.  Amending the Complaint

As an initial matter, in his response to Owens' summary judgment motion, Richardson acknowledges a "technical error" in his Complaint—specifically, that Count III for conversion is simply a restatement of Count II for unjust enrichment. Doc. 20 at 20. Consequently, in the event the Court finds Count III fails to allege facts sufficient to support a claim for conversion, Richardson requests leave to amend under Fed. R. Civ. P. 15(a)(2). However, based on the untimely nature of the request made in response to a pending summary judgment motion, and because Richardson has provided no reason for making the request so late in this litigation, the Court will not allow an amendment at this stage.[7]

---

[7] On May 4, 2021, more than a week after oral argument on the summary judgment motion, Richardson filed a Motion to Amend Pleadings to Conform with Evidence, which seeks to amend the Complaint under Federal Rule of Civil Procedure 15(b)(1). Doc. 32. Rule 15(b)(1), however, is inapplicable at the summary judgment stage. *See* Fed. R. Civ. P. 15(b)(1) (providing for amendments "during and after trial"); *Blue Cross and Blue Shield of Alabama v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990) (noting that Rule 15(b) was inapposite where there was no trial because the district court decided the case at the summary judgment stage); *Gold v. Local 7 United Food and Commercial Workers Union*, 159 F.3d 1307, 1309 n.3 (10th Cir. 1998) ("Rule 15(b) seems a totally inappropriate vehicle for a motion to amend prior to trial."), *abrogated on other grounds by Styskal v. Weld Cnty. Bd. of Comm'rs*, 365 F.3d 855 (10th Cir. 2004). Additionally, Richardson's motion is devoid of any detail, such as what amendment(s) he wishes to make and why he

Rule 15 of the Federal Rules of Civil Procedure provides that, after a responsive pleading has been served, a party may amend its complaint only with leave of the Court or written consent of the opposing party. Fed. R. Civ. P. 15(a)(2). Here, Owens does not consent to an amendment,[8] so Richardson may only amend with leave of the Court. Although Rule 15 provides that leave to amend should be freely given "when justice so requires," *id.*, the Eleventh Circuit has instructed that "a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment." *Maynard v. Bd. of Regents of Div. of Univs.*, 342 F.3d 1281, 1287 (11th Cir. 2003) (citation omitted) (holding that district court did not abuse its discretion in denying a motion to amend filed on the last day of discovery because granting the motion "would have produced more attempts at discovery, delayed disposition of the case, . . . likely prejudiced [the opposing party] . . . [and] there seems to be no good reason why [the movant] could not have made the motion earlier.").

Indeed, the Eleventh Circuit has consistently upheld district court denials of leave to amend where a party sought leave after a court-imposed deadline—particularly where the amendment was intended to address shortcomings identified by an opposing party in a summary judgment motion. *See, e.g., Lowe's Home Ctrs., Inc. v. Olin Corp.*, 313 F.3d 1307, 1314-15 (11th Cir. 2002) (holding that it is not an abuse of discretion for a district

---

failed to move to amend until more than a year after the amendment deadline. Thus, Richardson's motion is DENIED for the same reasons discussed above.

[8] *See* Doc. 22 at 5, n.3 ("Plaintiff seems to ask in his opposition for leave to amend if the Court finds his pleading or evidence lacking.[] Defendant would object to any such leave. Discovery is closed. The pleadings have been closed for some time, and the time for filing of, and response to, dispositive motions has passed.").

9

court to deny a motion to amend "when such motion is designed to avoid an impending adverse summary judgment" or "following the close of discovery, past the deadline for amendments and past the deadline for filing dispositive motions."); *Carruthers v. BSA Adver., Inc.*, 357 F.3d 1213, 1217-18 (11th Cir. 2004) (affirming district court's denial of motion to amend filed six months after the court's amendment deadline and two months after the close of discovery).

Here, the deadline for filing amendments to pleadings has long passed. Indeed, the Uniform Scheduling Order issued by the Court in October 2019 provides that "Plaintiff shall file any motions to amend the pleadings . . . on or before **January 3, 2020**," approximately 16 months ago. Doc. 12 at 3 (emphasis in original). Discovery closed on September 30, 2020, approximately seven months ago. Doc. 15 at 4. Richardson has provided no reason for failing to amend the pleading before now, when Owens' summary judgment motion is pending before the Court. To the extent Richardson is attempting to remedy potential shortcomings identified by Owens in his motion, that is an insufficient basis for amendment. *See, e.g., Lowe's*, 313 F.3d at 1314-15; *Carruthers*, 357 F.3d at 1217-18. Therefore, Richardson's untimely request to amend the Complaint is DENIED, and the Court will consider the Complaint as written in its current form.[9]

---

[9] During oral argument, Richardson's counsel noted that this case was originally filed in state court, which has different pleading standards than this Court. Nevertheless, this action was removed to this Court in September 2019, approximately nineteen months ago; thus, Richardson has had ample opportunity to move to amend prior to this point.

## B. Richardson's Fraud Claim

To state a claim for fraud or misrepresentation under Alabama law, a plaintiff must allege: (1) a misrepresentation of a material fact; (2) made willfully to deceive or recklessly without knowledge; (3) which was justifiably relied upon by the plaintiff under the circumstances; and (4) which caused damages as a proximate consequence. *General Cigar Co., Inc. v. CR Carriers, Inc.*, 948 F. Supp. 1040, 1043 (M.D. Ala. Nov. 18, 1996) (citing *McGarry v. Flournoy*, 624 So.2d 1359, 1361 (Ala. 1993) (citing Ala. Code § 6-5-101)). A plaintiff alleging fraud is held to a higher pleading standard. *See* Fed. R. Civ. P 9(b). Specifically, a plaintiff "must state with particularity the circumstances constituting fraud." *Id.* To satisfy this higher pleading standard and demonstrate a valid claim for fraud, a complaint must state:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotation omitted)).

In its entirety, Richardson's Count I for fraud states:

> 19) Plaintiff adopts and incorporates all allegations in the preceding paragraphs as if fully set forth herein.[10]

---

[10] The Court notes that, by incorporating all preceding paragraphs into every count in the Complaint, Plaintiff's Complaint is a quintessential shotgun pleading typically not tolerated. *See, e.g., Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1045 n. 39 (11th Cir. 2014) ("The complaint, through its incorporation into successive

11

> 20) The Defendant fraudulently misrepresented to Plaintiff that profits from Cubahatchee Creek Whitetails partnership would be split 50/50, and John Richardson relied on that misrepresentation, to his detriment.

Doc. 1-1 at 3-4. Owens argues that this single allegation cannot form the basis of a fraudulent misrepresentation claim because a promise to split profits is not a material fact but rather a promise to perform in the future. Consequently, this claim should have been pled as a claim for *promissory* fraud, but that claim would also fail because Richardson admits he has no knowledge or evidence of Owens' intent at the time of the alleged misrepresentation. *See* Doc. 19 at 6-7; Doc. 18-3 at 77:5-17.

Upon consideration, the Court agrees that Richardson's fraud claim fails with respect to the promise of profits. A claim of promissory fraud hinges on "a promise to act or not to act in the future." *Madison Cnty. v. Evanston Ins. Co.*, 340 F. Supp. 3d 1232, 1283 (N.D. Ala. 2018) (citing *Ex parte Michelin North America, Inc.*, 795 So. 2d 674, 678 (Ala. 2001)). To prevail on a promissory fraud claim, a plaintiff must provide proof that, at the time of the misrepresentation, the defendant possessed the intent not to perform the act promised and the intent to deceive. *Id.* (citing *Robinson v. Sovran Acquisition Ltd. P'ship*, 70 So. 3d 390, 396 (Ala. Civ. App. 2011)).

---

counts all preceding allegations and counts, is a quintessential 'shotgun' pleading—the sort of pleading we have been roundly condemning for 30 years."); *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 806 & n.4 (11th Cir. 2010) (finding a "typical shotgun pleading" where the last of a complaint's ten counts "amounts to an amalgamation of all counts"); *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006) (finding complaint was a "typical shotgun pleading" where each count incorporated all previous allegations). However, Owens did not move to dismiss the Complaint; instead, he answered the Complaint, thereby initiating months of discovery, and now moves for summary judgment. Thus, the Court will construe Richardson's allegations as liberally as it can and make a determination based on the substance of the facts in the record rather than the form of the pleading. *See* Fed. R. Civ. P. 56(a) (providing that summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact").

In his deposition, Richardson testified that he has no knowledge nor evidence that, at the time of the alleged misrepresentation, Owens intended not to split profits with him or to deceive him. Doc. 18-3 at 77:5-17. Moreover, Richardson does not dispute this lack of evidence in his response. Thus, Richardson cannot prevail on a fraud claim with respect to the promise of splitting profits. *See Wade v. Chase Manhattan Mortg. Corp.*, 994 F. Supp. 1369, 1382 (N.D. Ala. 1997) ("[A] plaintiff must present sufficient evidence of all the elements of promissory fraud to prevent summary judgment, including intent to deceive and intent not to perform . . . . [P]laintiffs have failed to present evidence of these required intent elements, thereby entitling defendant to summary judgment as to all of plaintiffs' fraud claims.").

Richardson argues in his response, however, that the material misrepresentation on which he supposedly relied was *not* the promise of profits, as stated in the Complaint, but the fact that Richardson and Owens were partners. Doc. 20 at 18. This argument fails for several reasons. First, the heightened fraud pleading standard requires that Richardson state in his Complaint "precisely what statements were made" to his detriment and "the content of such statements." *Ziemba*, 256 F.3d at 1202 (quoting *Brooks*, 116 F.3d at 1371). Richardson's Complaint specifically states that "Defendant fraudulently misrepresented to Plaintiff that profits from [the] partnership would be split 50/50, and John Richardson relied on that misrepresentation, to his detriment." Doc. 1-1 at 4. Nowhere in the Complaint does Richardson allege that he relied on a misrepresentation that the parties were partners. Second, Richardson testified in his deposition that, at the time of the parties' agreement, Owens "kept denying partnership." Doc. 18-3 at 35:2-10. This admission negates any

13

possible reliance on an alleged misrepresentation by Owens that he and Richardson were partners.[11] Thus, there is insufficient evidence in the record to support a fraud claim based on the promise of profits or the formation of a partnership. Accordingly, Owens is entitled to summary judgment on Richardson's Count I for fraud, and that claim is DISMISSED.

### C. Richardson's Conversion Claim

"Alabama law defines conversion as the exercise of dominion of another over personal property to the exclusion of or in defiance of the owner's right." *Brasher v. Allstate Indemnity Co.*, 2018 WL 5629918, at *4 (N.D. Ala. Sept. 7, 2018) (citing *Pantry, Inc. v. Mosley*, 126 So. 3d 152, 162 (Ala. 2013)). Accordingly, to establish a claim for conversion under Alabama law, a plaintiff must allege facts showing "that the defendant converted specific personal property to his own use and beneficial enjoyment or that the defendant destroyed or exercised dominion over property to which, at the time of the conversion, the plaintiff had a general or specific title and of which the plaintiff was in actual possession or to which he was entitled to immediate possession." *Id.* (citing *Schaeffer v. Poellnitz*, 154 So. 3d 979, 988 (Ala. 2014)). Conversion of specific personal property may occur in various forms, including "a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse." *Bennett*

---

[11] *See Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 407 F. Supp. 3d 1216, 1246-47 (N.D. Ala. 2019):

> The doctrine of reasonable reliance holds that a plaintiff cannot maintain a fraud-based claim unless . . . he reasonably relied on the putative misrepresentation. A plaintiff who claims reliance on a misrepresentation must have believed the statement to be true. "If it appears that he was in fact so skeptical as to its truth that he placed no confidence in it, it cannot be viewed as a substantial cause of his conduct." *Smith v. J.H. Berry Realty Co.*, 528 So. 2d 314, 316 (Ala. 1988) (internal citations omitted).

*v. CIT Bank, N.A.*, 482 F. Supp. 3d 1204, 1211-12 (N.D. Ala. 2020) (quoting *Ott v. Fox*, 362 So. 2d 836, 839 (Ala. 1978)).

In its entirety, Richardson's Count III for conversion states:

> 23) Plaintiff adopts and incorporates all allegations in the preceding paragraphs as if fully set forth herein.
>
> 24) The Defendant claims that any and all work and materials on the property are now his and his alone. The Defendant will profit substantially from the work, the pipes installed, and fuel expended by John Richardson on the property, which is now listed for sale.

Doc. 1-1 at 4. In his motion, Owens argues that Richardson's conversion claim fails for numerous reasons: (1) Richardson never states the word "conversion" or any variation thereof in the body of the Complaint; (2) work is not "specific personal property" and, thus, cannot be the object of conversion; (3) Richardson fails to identify any "materials" supposedly converted by Owens; and (4) to the extent the claimed "materials" are intended to be pipes or fuel, Richardson testified in his deposition that the pipes have nothing to do with the deer business and there is no allegation or evidence that Owens exercised unlawful dominion over fuel owned by Richardson. *See* Doc. 19 at 11-12.

The Court agrees that it is unclear what specific personal property Richardson alleges was wrongfully converted.[12] Even construing the Complaint's allegation liberally, the "work and materials" are insufficient to support a conversion claim. The record before the Court, with the benefit of discovery, failed to develop support for this claim. First, as noted by Owens, there are no allegations in the Complaint or evidence in the record

---

[12] As discussed above, Richardson acknowledges in his response that the conversion count is essentially a restatement of the unjust enrichment count. *See* Doc. 20 at 20.


suggesting that Owens unlawfully converted fuel owned by Richardson. Second, Richardson cannot maintain a conversion claim against Owens as to either general work he performed on Owens' property or pipes installed on Owens' property.

As to Richardson's work, Alabama law provides that "[a] partner is not entitled to remuneration for services performed for the partnership, except for reasonable compensation for services rendered in winding up the business or not for profit activity of the partnership." Ala. Code 10A-8A-4.01(h). Thus, even assuming a partnership existed between the parties in this case, as Richardson contends, he cannot maintain a conversion claim based on work he performed for the partnership. Additionally, Richardson does not dispute that work does not constitute specific personal property. As to the pipes Richardson alleges he installed on the property (s*ee* Doc. 1-1 at 2), Alabama courts have held that a plaintiff cannot maintain a conversion claim as to personal property—such as a pipe—that has been incorporated into real property via improvements made to land.[13]

Now, Richardson argues in his opposition to the summary judgment motion that what was allegedly converted is *not* fuel, *not* work, and *not* pipes, as alleged in the Complaint, but instead he says it was conversion of the deer remaining on the property.

---

[13] *See, e.g., Hatfield v. Spears*, 380 So. 2d 262, 265 (Ala. 1980) ("[A]n action for conversion [of dirt] could not be maintained because the dirt was permanently affixed to realty and, thus, became incorporated into that realty. Alabama law is clear that trover will only lie for conversion of chattels and will not lie for the conversion of personal property, which is . . . incorporated into real property.") (citations omitted); *KTK Mining of Virginia, LLC v. City of Selma, Alabama*, 2013 WL 12353076, at *13 (S.D. Ala. June 10, 2013) ("[T]o the extent [plaintiff] is alleging [defendant] converted [plaintiff's] 'work . . . done . . . in performance of its construction contract[s,]' which, put differently, would be the improvements [plaintiff] was able to make to the Circle prior to the work stoppage, [plaintiff] cannot state a claim for conversion of such 'work' (or its improvements to the Circle) because its personal property was converted to real property status when incorporated into improvements to the Circle.") (adopted in relevant part by *KTK Mining of Virginia, LLC v. City of Selma, Alabama*, 2013 WL 12353077 (S.D. Ala. July 2, 2013)).

Although deer are not mentioned in the conversion count, Richardson argues that allegations elsewhere in the Complaint claiming a right to the deer were adopted and incorporated into the count. However, the Complaint contains only a single allegation addressing Richardson's rights with respect to the deer, which states, "Richardson is entitled to one-half of the *equity* of the deer raised during the existence of the . . . partnership." Doc. 1-1 at 3 (emphasis added). Thus, nowhere in the Complaint does Richardson claim a right of ownership over the deer themselves.[14] *See Drennen Land & Timber Co. v. Privett*, 643 So.2d 1347, 1349 (Ala. 1994) (holding conversion claim could not be sustained where plaintiff claimed a right to the value of the subject property, but not the right to possess the subject property).

As to Richardson's claim for "one-half of the equity of the deer," which is essentially a claim for half the value of whatever the deer *may* be worth in the event they are eventually sold, there is also insufficient evidence in the record to allow a conversion claim forward. In *Patel v. Shah*, 295 So.3d 659 (Ala. 2019), the Alabama Supreme Court considered whether a corporation shareholder could bring a conversion claim based on defendant's alleged retention of plaintiff's share of business profits. The court found a

---

[14] In his response, Plaintiff also does not appear to claim a right of ownership over the deer. Instead, he reiterates the above allegation and states, without explanation, that it "clearly establish[es] a claim for conversion." Doc. 20 at 20. Elsewhere in the response, arguing his fraud claim, he states that he is entitled "to half of the *value* of all the animals raised." *Id.* at 17 (emphasis added). Richardson also argued that he should "be entitled to half of the *proceeds* of the sale of [the] deer." *Id.* at 9 (emphasis added). Regardless, it is well settled that a plaintiff may not expand the scope of the allegations in the complaint to defeat summary judgment. *See, e.g., Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment.") (citation omitted).

conversion claim not legally viable because the money at issue was not capable of identification.

Under Alabama law, an action for conversion of profit, or money, "is improper unless there is earmarked money or specific money capable of identification." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1303 (11th Cir. 2010). Alabama law interprets "specific money capable of identification" literally. *Bennett*, 482 F. Supp. 3d at 1212. "Money is specific and capable of identification where, for example, it is 'money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money rather than to merely deliver a certain sum.'" *Id.* (citing *Edwards*, 602 F.3d at 1304 (emphasis omitted) (quoting *Gray v. Liberty Nat. Life Ins. Co.*, 623 So. 2d 1156, 1160 (Ala. 1993)). In other words, a conversion claim will not lie where there is no alleged claim over *specifically identified* money in the form of "particular coins or bills, or money in a bag or chest, or payment into a special account." *Edwards*, 602 F.3d at 1304 (citing *Lewis v. Fowler*, 479 So.2d 725, 727 (Ala. 1985)). Indeed, even a specific and identifiable *amount* of money is insufficient to support a conversion claim. *Id.* ("Identifiable amounts of money are one thing, specific money capable of identification is another.[] [A]n action for the conversion of money requires the money itself, not just the amount of it, to be specific and capable of identification.").

Here, similar to *Patel*, Richardson seeks a share of the profit from any deer sold in accordance with the parties' oral agreement. But here, like in *Patel*, the money at issue is neither specific nor capable of identification. There is no evidence in the record—and

18

Richardson does not allege—that the parties had an agreement as to *specific* money. Indeed, the deer have not been sold, and it is unclear how many deer are on the property; if they can or will be sold; how much profit, if any, they can or will bring; or even how the parties defined profit (e.g., splitting "making money" as Richardson described, as a share of the sales price less expenses, or something else). As a result, there is no evidence in the record to support a conversion claim for "one-half of the equity of the deer." *See Hensley v. Poole*, 910 So.2d 96, 101 (Ala. 2005) (holding there was no cause of action for conversion where the plaintiff claimed a 30% share of business profits but did not allege or provide evidence indicating "that the money at issue was in any way segregated or identifiable"). Viewing the facts in the light most favorable to Richardson, as the Court is required to do, there is insufficient evidence in the record to support a claim for conversion; there is simply no showing that a jury could reasonably find for Richardson on the claim asserted. Accordingly, Owens is entitled to summary judgment on Richardson's Count III for conversion, and that claim is DISMISSED.

### IV. CONCLUSION

For the reasons set forth above, it is ORDERED that:

1. Plaintiff's Motion to Amend Pleadings to Conform with Evidence (Doc. 32) is DENIED.

2. Defendants' Motion for Summary Judgment (Doc. 18) is GRANTED on all counts as to both Defendants.

3. By **May 14, 2021**, Owens must notify the Court whether he intends to pursue his counterclaim.

DONE this 7th day of May, 2021.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE